THE STATE v. NICHOLAS CAMPBELL, Plaintiff in Error.

Division Two, December 29, 1923.

1. **MURDER:** Proof: Corpus Delicti: Confession: Insanity.   The *corpus delicti* is established by the finding of the body of deceased under circumstances showing he had been shot to death by some person; and the *corpus delicti* being thus established, the voluntary confession of defendant that he shot deceased with a gun and thereby killed him is sufficient to establish his guilt, if in fact he was sane at the time he made the confession and at the time he committed the act.

2. **INSANITY:** Question for Jury.   The properly authenticated record showed that defendant was adjudged insane in 1906; that he was confined in a hospital as "a dangerous person to be at large" and was discharged as recovered in 1914.   There was evidence that after his discharge he was still insane, nervous, jumping around, badly unstrung, had a tendency to throw table utensils into the stove and burn them up.   Physicians testified that he is not mentally developed, is mentally deficient, about like a child six years old; that he is afflicted with paranoia, a condition which develops a homicidal tendency, and is a form of insanity which destroys a sense of right and a fear of God and leaves only fear of a material type.   All his actions, including his statements when arrested and while in the custody of officers, indicate a person of unbalanced mind, who seemed not to realize he had done wrong in killing deceased, but only feared a material punishment.   *Held*, sufficient evidence to submit the question of his insanity to the jury.

3. **CONFESSION:** Insanity: Instruction: Flight as Presumption of Guilt: Assumption of Fact.   A confession of an insane person is no confession at all; and where defendant has confessed that

he killed deceased, buried his body, and a week later took his horses, wagon and household goods and drove away into another county, where he was found camped in the woods, but pleads insanity as a defense, and there is sufficient evidence requiring the submission of the question of his insanity to the jury, it is error to give an instruction telling the jury that flight raises a presumption of guilt, and that if they believe and find from the evidence that the defendant, after the alleged homicide, fled from the scene of the tragedy for the purpose of avoiding arrest and trial for the offense, they could take such fact into consideration in determining his guilt. The effect of the instruction was to tell the jury that defendant's flight was a presumption that he was sane, and in effect told them he was not insane, whereas the law is that, notwithstanding his confession and his flight, he was not guilty unless he was sane at the time he committed the act. *Held*, by WALKER, J., dissenting, that the instruction was not erroneous in assuming the existence of an admitted fact, namely, the murder and flight, and there being no need for the State to rely upon the presumption of guilt arising from flight, the instruction was harmless.

4. **INSTRUCTION: Statements by Defendant: No Exception Because of Insanity: No Request.** To instructions given for the State relating to acts and statements of defendant which do not require a finding that they were done or made while he was sane, he is entitled to a qualifying instruction telling the jury that no act or statement of his can be taken as evidence of his guilt unless it occurred while he was sane and capable of understanding what he was saying or doing, if he asks it; but if he asked no such instruction, and did not in his motion for a new trial predicate error on the failure of the court to instruct upon all the law of the case, the giving of such instructions for the State cannot be held to be error on appeal.

Error to Carter Circuit Court.—*Hon. E. P. Dorris,* Judge.

REVERSED AND REMANDED.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

The third paragraph of the instruction numbered 3 given upon the court's own motion, told the jury that

flight raises the presumption of guilt. This court has recently declared that such an instruction invades the province of the jury. State v. Hogan, 252 S. W. 387. For the error above noted this cause should be reversed and remanded.

WHITE, J.—The defendant, April 27, 1922, in the Circuit Court of Carter County, on a trial before a jury, was found guilty of murder in the first degree, committed upon one Karl Herman, and his punishment fixed at death. An appeal of this case was dismissed for defective affidavit (248 S. W. 927). The case is now brought here on writ of error sued out in this court.

Karl Herman lived on his farm near Hunter in Carter County. He disappeared from observation about January 24, 1922. The defendant, who was at Herman's place, told callers that Herman had gone to St. Louis on business, and that he was left to take care of the place. In about a week Campbell took the horses and wagons of Herman and drove away. He was arrested about six miles northeast of Alton, in the hills, where he was camping a quarter of a mile from any road.

Campbell had at the time a complete outfit for camping: bedding, teams, wagon, provisions, cooking utensils, axe, hammer, etc. He had two twelve-gauge shotguns, a 22-calibre, and one 38 automatic Colt, and one 38 Ivor-Johnson revolver. The deputy sheriff who arrested him found hand-cuffs in a trunk at the camp and put them upon defendant. He told the officer who arrested him that he had killed Herman, and said that he took the household goods because he figured that was the best way to hide the crime; that he had a sale on that afternoon for the stove, that some people were going to look at it and he was going to sell it; then he told where he had buried the body of Herman. The body was found in Herman's barn, buried about a foot deep under manure. Defendant explained that he had a quarrel with Herman about the war. He asked Herman if he had ever served in the army, and Herman said, "No, to hell with the

Government." Defendant said he couldn't stand that, and he grabbed a gun and shot Herman. He confessed the killing to a number of witnesses. The body of Herman showed a shot through the body near the heart—a wound which produced death.

Quite a volume of evidence was introduced by the State showing the circumstances and details surrounding the finding of Herman's body, all of which tended to corroborate the statements of the defendant as to the time and manner of inflicting death by him upon the deceased. Campbell did not testify, but offered evidence for the purpose of proving he was insane at the time, insanity being his only defense.

I. The body of Herman was found under circumstances. showing that he was shot to death by some person; the *corpus delicti* was thereby established. The confession of the defendant after the proof of *corpus delicti* was sufficient to establish his guilt if in fact he was sane at the time he made the confession and at the time he committed the act. [16 C. J., pp. 735, 736; State v. Scott, 39 Mo. l. c. 426; State v. Young, 237 Mo. l. c. 177.]

Corpus Delicti: Confession.

II. We think the evidence offered by the defendant was sufficient to submit the question of the defendant's sanity to the jury. A copy of a record of the Superior Court of Marin County, California, properly authenticated, was produced, to show that Campbell was adjudged insane December 7, 1906. It was found that he was so far disordered in mind "that it was dangerous . . . for such person to be at large." The record of the State Hospital at Talmadge, California, where he was confined, showed that he was committed to that institution from Marin County December 18, 1906, and discharged as recovered August 1, 1914.

Insanity: Question for Jury.

In the deposition of Annie Campbell, taken in California, April 18, 1922, she testified that she saw the defendant frequently after his discharge from the insane

asylum, and that he was not entirely cured; she was afraid of him, and she thought he was insane after his discharge, as well as when he was committed. She described his demeanor. Among other things she said he was jumping around, very nervous, and acted like a man badly unstrung.

A brother of the defendant, J. C. Campbell, by deposition testified, April 18, 1922, that he saw him every day for three weeks after he was discharged from the insane asylum. He said the defendant was very nervous; "he had a tendency to throw the table utensils (knives, forks, etc.) into the stove and burn them up."

Dr. A. T. Bugg, one of the physicians appointed by the court, examined the defendant and testified that he was not an expert neurologist and would not pass upon the question as to whether the defendant was insane. He said the defendant was not developed mentally; he was mentally deficient—about like a child six years of age. Dr. Eblen said that in his judgment defendant had a mind on par with a twelve-year-old child. Dr. Johnson, testified that the defendant's mental condition was subnormal, and from the examination which the physicians made they determined that he was afflicted with paranoia, a condition, he explained which rarely develops into a suicidal tendency, but develops a homicidal tendency.

"It seems to them (paranoiacs) right and proper to destroy life, but they are devoid of fear of the Creator; in fact I don't think they acknowledge one—not responsible to our Creator."

That witness further explained that a person afflicted with that form of insanity was disposed to conceal or cover up anything he said or did: "They don't seem to shirk their responsibility; their fear seems to be of a material type."

There was more evidence of that kind. The actions of the defendant, his statements when arrested and while in custody of the officer, all indicate a person of unbalanced mind. He hardly seemed to realize that he had

done anything wrong, although his actions indicated that he was afraid he might be punished for it, which corresponds with the physician's statement that the fear was of a material type not caused by a conscious wrong. We think this evidence was sufficient to submit to the jury the question whether the defendant was insane.

III. One instruction complained of in the motion for new trial was number three, which contained this paragraph:

"Flight raises the presumption of guilt; and if the jury believe and find from the evidence that the defendant, after the alleged homicide charge in the information, fled from the scene of the tragedy in Carter County, Missouri, for the purpose of avoiding arrest and trial for said offense, you may take this fact into consideration in determining his guilt or innocence of the offense charged."

Flight of Insane Person.

The State confesses error in the giving of this instruction, citing State v. Hogan, 252 S. W. 387; State v. Swarens, 241 S. W. 934.

It is asserted that the instruction is harmless because the defendant admits that he killed Herman, and to indulge the presumption that he had done so adds nothing to that confession; the court in an instruction may assume a fact which is not controverted.

This argument proceeds upon the theory that the defendant was sane when he made the admission. A confession of an insane person would be no confession at all. The defendant denies that he committed any crime, because he was insane at the time he is charged with killing Herman. The effect of this instruction is to tell the jury that if he fled from the place where the crime was alleged to have been committed, or was found in another place soon afterwards, that is a presumption of guilt; that is, a presumption that he was *sane,* because he could not be guilty unless he was sane when he committed the act. In short, the instruction tells the jury the defendant was not *insane* and takes away that defense from their consideration.

IV.   Some instructions were given regarding the acts of the defendant and the statements made by him, which do not require a finding that such acts and statements were made by him while sane.   No doubt the defendant would have been entitled to an instruction if he had asked it, qualifying all such instructions to the effect that no acts or statements of his could be taken as evidence of his guilt unless such acts and statements occurred while he was sane and capable of understanding what he was saying and doing.   However, the defendant asked no such instruction, nor did the motion for new trial predicate error upon the failure of the court to instruct upon all the law of the case, so there was no error in that respect.

V.   Error was assigned to the ruling of the court in failing to sustain the motion for new trial on account of misconduct of a juror, and the failure of the court to accept the written report of the physicians appointed to inquire into the condition

Other Complaints.

of the defendant.   Whatever the merits of these complaints, cause for them likely will not occur at another trial.

The judgment is reversed and the cause remanded. *David E. Blair, P. J.,* concurs; *Walker, J.,* dissents in separate opinion.

WALKER, J. (dissenting).—The sole ground of the reversal of the judgment of conviction in the majority opinion is based on the alleged error of the trial court in giving the instruction on the presumption arising from the flight of the defendant.

Our statute prohibits the reversal of the judgment in any case unless it shall appear that error was committed against the appellant materially affecting the merits of the case.   [Sec. 1513, R. S. 1919.]   The defendant voluntarily admitted, orally and in writing, that he killed the deceased, buried the body as heretofore detailed, to conceal his crime; that he stole and fled with the property of the deceased and was found in the exclusive possession.

thereof recently after the commission of these heinous crimes. There was no need for the State to rely on the presumptions of fact arising from the flight and possession of the recently stolen property. [21 Cyc. 940.] The court, in its instructions, might well have assumed that the defendant shot and killed the deceased. ''This court has many times held that the trial court in its instructions to the jury may assume the truth of a proposition which is established by the undisputed evidence in the case.'' [Sotebier v. Transit Co., 203 Mo. 702, 102 S. W. 651; Davidson v. Transit Co., 211 Mo. 320, 356; Midwest National Bank v. Davis, 233 S. W. 411; 38 Cyc. 1667.] Indeed, the plea of insanity is but a plea in the nature of confession and avoidance; ''it admits the act charged but avers there was no criminal intent accompanying the act and therefore denies the crime charged.'' [State v. Pagels, 92 Mo. 300, 309; State v. Weagley, 286 Mo. l. c. 689.] The instruction having reference to an admitted act, was harmless and the judgment in the furtherance of justice, should be affirmed.