THE STATE v. BERT MILLER, *alias* RED BERRY, Appellant.

Division Two, March 19, 1925.

1. **APPEAL: Bill of Exceptions: Identification: Separately Bound.** The just rule is to accept a tendered bill of exceptions when it may be fairly gathered from the transcript and attendant evidence and circumstances that such bill is actually the one approved by the trial court and ordered filed. And so where the transcript recites that the court found defendant's tendered bill of exceptions to be true and correct, signed, sealed and allowed the same and ordered

that it be filed and made a part of the record in the case, and the clerk certifies that "the above and foregoing is a true, correct and complete transcript of the bill of exceptions, information, record and proceedings of court" in the case "as the same appears of record and on file in my office," and such certificate appears at the conclusion of a separately bound document entitled "Record," another separately bound document entitled "Bill of Exceptions," purporting to be a part of the record in the same case, and bearing the clerk's file mark showing it was filed in the trial court on the same day that the bill of exceptions was approved and ordered filed, and filed in this court together with and on the same day the other document was, is sufficiently identified, although no separate certificate of the clerk is appended.

2.  ———: Motion to Transfer to Juvenile Court: No Evidence.  A motion to quash the information and to transfer the case to the juvenile court and a plea in abatement do not prove themselves, and where the record shows that evidence in support of them was received but does not preserve the motions nor the evidence, the action of the court in overruling them cannot be considered on appeal.   And the fact that the record shows they were filed and exceptions saved to their overruling does not aid appellant, because exceptions have no place in the record proper; but even if such exceptions were properly saved, the court's action in overruling the motions could not be reviewed, unless the evidence, upon which the ruling was based, is preserved and brought here.

3.  INSTRUCTION: Flight: Presumption of Guilt.   To instruct the jury that "flight raises a presumption of guilt" is reversible error.

4.  ———: Perfect and Imperfect Self-Defense.   The State's evidence was to the effect that, as deceased and another were standing by a lunch wagon, defendant approached and took hold of a little girl, who jerked loose and started to run, and he caught hold of her and dragged her back, whereupon deceased slapped him; that he thereupon said, "I will go home and get my gun and shoot you;" that he went away and soon came back and began cursing deceased, who said nothing, but advanced towards defendant, who retreated, but kept cursing and threatening deceased; and that after deceased had followed him a short distance he suddenly shot him three times in quick succession, and then fled the State.   The defendant testified that deceased put his arm around one of three girls passing the lunch wagon, and he ordered him away from her; that deceased then knocked him down and they began fighting; that he backed away for some distance, with deceased following and fighting him, when deceased knocked him down again and drew his gun and shot at him as he was getting up; that he then drew his gun and fired twice, and fled because he was scared.   The State's evi-

State v. Miller.

dence was that deceased had no gun. *Held*, that, under defendant's evidence, standing alone, he was clearly entitled to the given instruction upon perfect self-defense and manslaughter, and under all the evidence he was entitled also to an instruction covering the law of imperfect self-defense. If defendant went to his room, procured the gun and returned to the scene of the prior difficulty, not for the purpose of killing deceased, as might be found from the State's evidence, but simply to overawe or "bluff" him, and deceased then assaulted and shot at him in the manner defendant and his witnesses testified, he was entitled to an instruction covering the law of imperfect self-defense.

5. **MOTION FOR NEW TRIAL: Denunciatory.** A motion for a new trial, denouncing in extravagant language the instructions given and the rulings made, although the record does not lend substance to the virulent accusations, tends to obscure the real errors and meritorious assignments, and creates doubts and suspicion in the minds of the appellate judges of the sincerity of counsel.

Citations to Headnotes: 1 and 2, Criminal Law, 17 C. J. 3420, 3421, 3463; 3, Criminal Law, 16 C. J. 2391; 4, Homicide, 30 C. J. 627; 5, Criminal Law, 16 C. J. 2735½.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

REVERSED AND REMANDED.

*Jesse W. Barrett*, Attorney-General, and *J. Henry Caruthers*, Assistant Attorney-General, for respondent.

(1)   The offense charged being murder in the first degree, his plea in abatement was properly overruled. Article 6, Chap. 21, R. S. 1919, as amended, Laws 1923. State ex rel. Menth v. Porterfield, 264 S. W. 388; State ex rel. Mattacia v. Buckner, 254 S. W. 181.   (2)   Practically all the objections offered by appellant, to the admission and rejection of testimony were based on either insufficient or no reasons at all, hence not properly preserved for review.   (3)   The evidence amply sustains the verdict and this court will not interfere therewith. State v. Arnett, 210 S. W. 83; State v. Long, 257 S. W. 208;

State v. Hembree, 242 S. W. 914. (4) The instructions given fully and correctly cover all the law applicable to the evidence and carefully submitted defendant's theory of the case to the jury. Those refused contained recitals of law submitted in those given, and were properly refused. (5) No objections and exceptions were made and saved by appellant to the argument of counsel for the State. Hence this point is not properly preserved for review. The facts stated in the motion for a new trial are not proved by the motion itself. State v. Rumfelt, 228 Mo. 454; State v. Whitsett, 232 Mo. 529. (6) The bill of exceptions is not authenticated or identified, therefore, there is nothing before this court for review but the record proper. State v. Howard, 225 Mo. 624.

DAVID E. BLAIR, J.—Defendant was charged with the crime of murder in the first degree, for killing one Joe Ferguson, in Jackson County, on September 23, 1922. He was convicted of murder in the second degree, was sentenced, in accordance with the verdict, to imprisonment in the State Penitentiary for thirty-seven years, and has appealed.

I. The ·learned Attorney-General contends that there is nothing before us for review except the record proper, because the bill of exceptions is not authenticated or identified. This is the first question for our consideration.

Bill of Exceptions.

The transcript of the record contains a recital that defendant presented his bill of exceptions to the court and that the court found the same to be true and correct and that the court signed, sealed and allowed same and ordered that it be filed and made a part of the record in the case.

The clerk of the circuit court certified "that the above and foregoing is a true, correct and complete transcript of the Bill of Exceptions, Information, Record and Proceedings of Court in the case of State of Missouri vs. Bert Miller, *alias* Red Berry, as the same appears of record and on file in my office." The foregoing certifi-

cate appears at the conclusion of the separately bound document, entitled, "Record." Another separately bound document, entitled "Bill of Exceptions," is also before us. Both documents purport to be part of the record in the case of State of Missouri, Plaintiff, vs. Bert Miller, *alias* Red Berry, Defendant, No. C-970, of the Circuit Court of Jackson County.

Said bill of exceptions purports to be signed by the judge of the Circuit Court of Jackson County, Missouri, at Kansas City, Division No. 5, designated under the rules of said court as Criminal Division A. To the separate document, entitled "Bill of Exceptions," no certificate of the clerk is appended. Both the purported record and bill of exceptions bear the file mark of the clerk of this court under date of November 12, 1924, thus indicating that they were filed together. The bill of exceptions also bears the following file mark: "Filed Jun. 25, 1924, W. H. Harper, Clerk. By E. G. Bush, Deputy." The record entry shows that the bill of exceptions, approved and ordered filed and made a part of the record in the case, was filed on June 25, 1924.

Notwithstanding the foregoing satisfactory evidence of the identity of the bill of exceptions now before us with the one approved by the trial court and made a part of the record below, we are now asked to hold that the bill of exceptions, which we have before us, has not been sufficiently identified or authenticated to authorize us to consider it. To hold this would require us to ignore the well-nigh conclusive evidence of its identity. We are satisfied of such identity and, as the bill of exceptions now before us is evidently the same one referred to in the clerk's certificate at the close of the "Record," it is sufficiently authenticated to comply with Section 4103, Revised Statutes 1919.

We are aware that this court has made some highly technical rulings concerning the identity and authenticity of bills of exceptions, but the better and more just rule is to accept a tendered bill of exceptions when it may be fairly gathered from the transcript and the attendant

307 Mo. Sup.—24.

evidence and circumstances that such tendered bill of exceptions is actually the one approved by the trial court and ordered filed. We should require nothing more than to be thoroughly satisfied that the document tendered as a bill of exceptions is, in fact, what it purports to be, a true recital of the proceedings had during the course of the trial and the exceptions saved by appellant.

The better practice is for circuit clerks to bind the transcript of the record and the bill of exceptions firmly together and, in certifying to the correctness of the bill of exceptions at the close of the transcript, to follow the words "bill of exceptions" with the words "hereto attached" or words of similar meaning. If this is not done it would be well to attach a separate certificate of identity and correctness at the close of the bill of exceptions. Such practice would obviate the frequent necessity of appellate courts considering this sort of question and wasting time and energy which might be usefully devoted to the real questions in the case.

II. The testimony offered by the State tended to show that the homicide occurred near Fifteenth and Charlotte streets in Kansas City on September 23, 1922. At about nine o'clock that evening, Joe Ferguson, the deceased, and one Ora Lamb, were standing near a lunch wagon eating sandwiches, when defendant came along the street yelling, "All you toughs get off Fifteenth Street, I just got out of jail." Defendant approached the lunch wagon and took hold of a little girl who came to the lunch wagon. She jerked loose and started to run and defendant caught her and dragged her back. Deceased then slapped the defendant. Defendant said, "What did you hit me for?" Deceased replied that he had a sister at home, and told defendant to let the little girl alone. Defendant then said: "I will go home and get my gun and shoot you." He then went north on Charlotte Street, and soon came running back and began cursing deceased. Deceased said nothing, but advanced toward defendant, who retreated as he advanced, and kept cursing and threatening deceased. Lamb testified

that he saw a gun in defendant's pocket.  After deceased had followed defendant a short distance south of Fifteenth Street upon the west side of Charlotte Street, defendant suddenly fired three times in quick succession. Deceased fell mortally wounded and died the next day. Defendant ran away, eluded the officers, and fled to the State of Texas, where he remained until June, 1923.

The State's testimony tended to prove that deceased was unarmed and that he did not strike defendant at any time, except to slap him when he took hold of the little girl and that deceased did nothing more than to walk toward defendant.  Deceased was twenty-eight years old and weighed about one hundred and ninety pounds.

The chief of detectives testified to a statement made by defendant, to the effect that deceased hit him in the mouth and that defendant and one Hedrick went back to defendant's room and got his gun and returned.  They saw deceased on the other side of the street and defendant said something to him and deceased said, "What would you do if I would come over there?"  And defendant commenced to shoot and shot at deceased three times. He then went to his room, changed clothes and left.

The defendant testified that he was seventeen years old at the time of the difficulty and was eighteen years old at the time of the trial; that on the night of the homicide he and another boy and three girls met after the picture show was over and were passing the lunch wagon, when deceased put his arms around one of the girls and said: "Come on and go with me, sweetie."  Defendant pushed deceased away and said, "Get away from that girl.  You are drunk."  The girl corroborated this part of the story and said that she left when a fight ensued. Defendant testified that deceased then knocked him down and they started fighting, and defendant backed away with deceased following and fighting him until they got south of Fifteenth Street on Charlotte, when deceased again knocked defendant down and then deceased drew a gun and shot once at defendant, as he was getting up. Defendant then drew his own gun and fired twice and fled because he was scared.

There were other witnesses who corroborated the story told by Lamb as State's witness. Defendant was also corroborated as to the occurrence of the fight and the shot fired by deceased. There was testimony tending to prove that some one picked up a revolver lying near the deceased after he fell and put the weapon in his pocket.

The State showed by Lamb and a witness named Parks that deceased had no gun and several police officers testified to a search of deceased and that no weapon was found upon him or near him. Three or four officers were within a block when the shots were fired. They immediately ran to the scene and, so promptly did they arrive, that one of them saw defendant running away and pursued him until he made good his escape.

The court instructed upon murder in the first and second degrees, manslaughter and self-defense and upon other subjects usually necessary in a trial for murder.

III.    The motion for new trial assigns error in the overruling of defendant's plea in abatement and motion to transfer the case to the juvenile court. Exceptions to such rulings have not been preserved in the bill of exceptions. Neither the plea in abatement and motion to transfer nor the evidence in support thereof have been preserved and brought before us. The record shows the filing of motions to quash the information and to transfer the cause to the juvenile court and shows the filing of the plea in abatement and that the court overruled each one and the same record recites that the defendant excepted to such ruling.

*Motions: No Evidence Preserved.*

The record is not the proper place for the lodgment of exceptions. All exceptions must be preserved in the bill of exceptions. [State v. Fraker, 137 Mo. 258; State v. Wilhoit, 142 Mo. 619; State v. Frank Sparks, No. 25,634, not yet reported.] Even had exceptions been properly saved, we cannot review the court's action thereon, because the evidence, upon which the court based its

rulings, has not been brought to this court. The record recites that the court heard evidence. Such motions do not prove themselves, but must be supported by evidence. [State v. McKee, 212 Mo. 138, l. c. 148; State v. Rozell and Smith, No. 25,768, decided at the present term and not yet reported.] The assignment is overruled.

IV. Instruction numbered four given by the court told the jury "that flight raises the presumption of guilt." The giving of a flight instruction in this form constitutes reversible error. [State v. Hogan, 252 S. W. (Mo.) 387; State v. Campbell, 301 Mo. 618; State v. Swarens, 294 Mo. 139; State v. Jordan, 306 Mo. 3.]

**Flight.**

V. Under the testimony of defendant and his witnesses, standing alone, he was clearly entitled to the instruction given upon perfect self-defense. The jury might not have believed defendant's testimony that deceased drew a gun and fired at him and might have believed the remainder of defendant's testimony and such situation justified the giving of the instruction upon manslaughter which the court gave.

**Perfect and Imperfect Self-Defense.**

But under all the evidence in the case, we think an instruction should have been given covering the law of imperfect self-defense. The jury might have believed the testimony of the State that, after the first difficulty, wherein deceased merely slapped the defendant, defendant went to his room and procured a weapon and returned to renew the difficulty, not for the purpose of killing the deceased, but for the purpose of overawing him. The State's evidence, that defendant cursed deceased and then withdrew as deceased advanced toward him, lends support to his view of the testimony.

If defendant went to his room and procured his gun and returned to the scene of the prior difficulty, not for the purpose of wreaking his vengeance upon deceased and of killing him for the indignity, to which he had been subjected, as might be found from the State's evidence,

but simply to overawe or "bluff" him, and deceased then assaulted defendant, in the manner defendant and his witnesses testified, and followed defendant and knocked him down and fired a shot at defendant and that defendant then shot deceased to protect himself from death or serious personal injury, the situation calling for an instruction upon imperfect self-defense existed.

The jury was not bound to believe all of the testimony of the State's witnesses, nor to reject it all, and the same is true of the testimony offered by defendant. It could believe part and reject part of the testimony offered by either. If this situation arises under the testimony upon retrial, an instruction upon the law of imperfect self-defense should be given. [See State v. Roberts, 280 Mo. 669, and cases therein cited relative to the law of imperfect self-defense.]

VI. Complaint is made of other instructions given and the refusal of certain instructions asked by defendant. We think the given instructions fully and fairly covered the law of the case, except as above Other Instructions. noted, and that such instructions were in fact liberal to the defendant. No just complaint can be made of the refusal of defendant's instructions. They were either covered by the instructions given or were comments upon the evidence or were properly refused for other reasons.

VII. We will not undertake to set out all the errors assigned in the motion for new trial. Many clearly groundless complaints are made therein. It is difficult Denunciatory to understand the point of view of counsel Motion. in filing a motion for new trial, denouncing in extravagant language every instruction given and every ruling made by the trial court, when the record entirely fails to lend substance to most of them. Such course only tends to obscure and cover up the real points in the record, upon which appellant relies for reversal, and creates doubt and suspicion in the minds of appellate judges of the sincerity of counsel, even as

to complaints which otherwise appear to be substantial. This is especially true where appellant files no brief in the appellate court.

VIII.   We have examined the record carefully and are satisfied that no reversible error was committed in the trial court in rejection or admission of tes-

**Evidence.**       timony or in its rulings upon objections made to argument of counsel for the State. Many of the objections made were general and therefore not sufficient to save for review the particular rulings.

IX.   Included in the motion for new trial and in the motion in arrest are challenges to the sufficiency of the information and verdict. We deem

**Information.**    them to be entirely sufficient and will not unnecessarily lengthen this opinion by discussing them.

X.   While we have noticed and considered numerous other assignments of error, we do not deem the propriety of the trial court's action therein challenged to be debatable or that discussion thereof is justified.

For the reasons above assigned, the judgment is reversed and the cause remanded for new trial. *White, J.,* concurs; *Walker, J.,* concurs, except as to Paragraph V.