STATE of Missouri, Respondent,

v.

Salvidor FALBO, Appellant.

No. 47442.

Supreme Court of Missouri,
Division No. 1.

March 14, 1960.

Gayles R. Pine and Robert L. Welling, of Pine & Welling, Warrensburg, for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Charged by indictment with murder in the first degree, the appellant, Salvidor Falbo, hereinafter referred to as defendant, was found guilty of murder in the second degree and his punishment fixed by the jury at imprisonment in the penitentiary for a term of 60 years. Defendant has appealed from the ensuing judgment.

The indictment alleged that defendant killed Shirley Alice Kyle on June 25, 1957, by placing his hand over her face and mouth thus causing her to suffocate. Defendant at that time was 15 years old but was large for his age, being six feet tall and weighing over 200 pounds. Both the Kyle and Falbo families lived in a relatively new housing development in Clay County, Missouri. The rear of the Kyle lot abutted a small tract upon which a lake was maintained for the benefit of persons living in that area. The Falbo family lived about two blocks away on the opposite side of the lake. According to an aerial photograph in evidence, there was a small wooded area just northwest of the dam and there was a rather large undeveloped wooded area just west of a road which appeared to run north and south a short distance west of the lake.

In the late afternoon of June 25, 1957, defendant had gone to the lake dressed in his swimming trunks. Shirley, aged 10, and her girl friend, Carol Clark who lived next door, had been playing near the lake. Defendant engaged in a conversation with Shirley and they were last seen by Carol walking into the wooded area to the northwest of the dam. About 7 p. m. Shirley was found dead, by a searching party, in the wooded area west of the road. Her body was more or less concealed in the weeds and brush and was unclothed except for a T-shirt she had been wearing. Her slacks, shoes, and panties were lying by the side of and partially on her body.

The defendant was taken into custody by Kansas City police officers at about 5 o'clock the next morning. He was found hiding in an excavation in the "north end area" of

Kansas City. Defendant was taken to police headquarters where he made an oral confession to the officers present in which he admitted having killed Shirley. Later he was turned over to the sheriff of Clay County and was taken to the police department in Excelsior Springs where, at about 8 a. m., he made another oral confession in the presence of a priest, the prosecuting attorney of Clay County, and other officers. On the following day he was questioned by Austin F. Shute, an assistant prosecuting attorney ,of Jackson County, in the basement of the Clay County jail and repeated his confession a third time. There was no conflict of any consequence in these statements, although some contained certain information that was not included in others. A consolidation of the information contained in the three interviews would include the following admissions by defendant: He stated that he met Shirley and asked her to go with him across the road and he would show her some birds; that they went into a wooded area where there was a small grassy place and they got into an argument, although he appeared not to remember what they argued about; that he put his hand over Shirley's mouth and nose and held it there for approximately ten minutes until she got quiet. In one interview it appears that he placed his hand over her face because she had screamed and in another his statement seems to indicate that he may have put his hand over her face because she wanted to leave the area. Also, in the statement given in the Clay County jail he stated that he intended to commit a sex assault upon her and on the way into the woods he picked up a large stick, broke it in two and took one end of the stick with him into the woods intending to kill her with it but that he did not strike her with the stick. He further stated that after Shirley stopped struggling he took off her slacks and panties and lay down beside her and "masturbated over her body." He then pulled her body into the weeds and brush and went home. Upon arriving home he took off his swimming trunks and dressed and then hitchhiked into Kansas City where he hid in various places until he was arrested.

Shirley's body was examined by Dr. Pate, the coroner of Clay County, and an autopsy was performed by Dr. Buhler, a pathologist. Both of these doctors described the condition of the body but neither could express an opinion as to the cause of death based solely upon their examination of the body. However, Dr. Buhler, in answer to a hypothetical question which assumed the fact that defendant had held his hand over Shirley's mouth and nose, expressed the opinion that she died of suffocation. He found no evidence that she had been raped, although Dr. Pate found a small laceration "near the vagina at the lower edge of the labium minora and near the hymen."

Defendant did not testify. His affirmative defense, however, was insanity, and his proof indicated that he had not recovered, was in need of extended institutional confinement, and very likely would never recover from the mental illness he was alleged to be suffering from. There is no occasion in this opinion to give the defendant's evidence in detail. It is perhaps sufficient to state generally that he was almost constantly in trouble from the time he was four years old until the instant offense was committed. He started running away from home at the age of four, and after entering school he frequently would run away from school. His grades were poor and he often fought with the other students. He was placed under the supervision of a social worker for the Family Service Association when he was about 12, and was kept for about 15 months in the Ozanan Boy's Home where he was often in trouble and frequently ran away. In his youth he seemed interested in sex (and practiced certain acts of sexual deviation) but according to one expert he considered himself more female than male and as a boy he would often wear his mother's underclothes. After being discharged from the Ozanan Home he was placed under the supervision of the Jackson County Juvenile Court and sent to the

McCune Home as a county case. His parents had him examined from time to time by psychiatrists, and from February 18, 1957 to April 20, 1957, he was a patient in the Neurological Hospital where he was given insulin shock and electric shock treatments. Various social workers, psychologists, physicians, and psychiatrists expressed the opinion that at the time of the homicide, and at various times before and after, the defendant was not of sound mind and that he was not aware of the difference between right and wrong at the time of the homicide. Other facts will be hereinafter detailed in connection with certain points briefed.

Prior to trial the defendant filed a motion to dismiss or, in the alternative, to proceed with trial in the juvenile court, which motion the court overruled. The first point briefed is the alleged error of the court in so ruling. The first reason advanced in support of that contention is that the indictment charged two felonies in one count, i. e., attempted rape and first degree murder. It is said that those two felonies are repugnant to each other and that it is error to join them. We have concluded that there is no merit in that contention. The indictment purports to charge a homicide while attempting to perpetrate rape, which, under the provisions of section 559.010 (all statutory references are to RSMo 1949, V.A.M.S.) is murder in the first degree. However, the indictment contains all the allegations necessary to charge first degree murder in addition to the references to the attempt to perpetrate rape, and the offense was submitted to the jury without reference to the charge that the homicide was committed in the attempt to perpetrate rape. Since the indictment properly charged the offense we think the allegation relating to the attempt to perpetrate rape should be disregarded as surplusage. It was unnecessary to allege an attempt to perpetrate rape in order to have submitted murder based on that theory, State v. Smith, Mo.Sup., 310 S.W.2d 845, but such unnecessary allegation did not vitiate the indictment. State v. Foster, 136 Mo. 653, 38 S.W. 721.

It is next said that the motion to dismiss should have been sustained because the indictment was not signed by the prosecuting attorney as required by Supreme Court Rule 24.01, 42 V.A.M.S. The indictment was signed by the foreman of the grand jury and an assistant prosecuting attorney. Sections 56.200 and 56.-210 provide for the appointment and commissioning of assistant prosecuting attorneys in counties of the second class (such as Clay) but do not specifically set out their duties or authority. However, in 27 C.J.S. District & Pros. Attys., § 30(1), p. 730, it is stated that "An assistant or deputy prosecuting attorney legally appointed * * * is generally clothed with all the powers and privileges of the prosecuting attorney; and all acts done by him in that capacity must be regarded as if done by the prosecuting attorney himself." Under statutes somewhat similar to the ones here involved we have held that an assistant prosecuting attorney had the authority to sign informations. See State v. Johnson, 351 Mo. 785, 174 S.W.2d 139, and State v. Chaney, Mo.Sup., 188 S.W.2d 19. We rule that the indictment in question was not invalid because it was signed by the assistant prosecuting attorney rather than by the prosecuting attorney.

There is also no merit in defendant's contention that the court erred in overruling his motion to proceed with trial in the juvenile court. The indictment was returned on July 2, 1957. On December 16, 1957, the court, of its own motion, ordered the indictment and other papers removed to the Juvenile Court of Clay County. Thereafter, the juvenile division heard evidence and on April 30, 1958, entered an order finding "from said evidence" that defendant was "not a proper person to be dealt with under the juvenile law; that he should be prosecuted under the general law for the indictment heretofore returned against him * * * and * * * that this cause be transferred back forthwith to said Criminal Court and to Division Number One thereof of

Clay County, Missouri, and the state is given leave to prosecute under said general law." It is defendant's contention that the order of December 16 constituted a final determination that defendant should be dealt with in the juvenile court and that the juvenile court could not thereafter order that defendant be prosecuted under the general law. We think those proceedings were regular and proper. Section 211.071 (P.P. Vol. 12, V.A.M.S.) provides that in cases such as the one before us the judge of the juvenile court is vested with the discretion of determining that the "minor may be prosecuted under the general law, whenever the judge after * * * hearing evidence finds that such child or minor is not a proper subject to be dealt with under the provisions of this chapter." The court, on December 16, properly transferred the case to the juvenile court so that said court would have the opportunity of exercising the discretion and making the determination provided for in Section 211.071.

■■ Defendant also contends that the court erred in admitting in evidence the extrajudicial admissions or confessions of the defendant for the reason that the State failed to prove that said statements were voluntarily made. As heretofore stated those oral statements were made in three different interviews. His first confession was obtained at the Kansas City Police Department shortly after his arrest. When the State endeavored to prove the statements made by defendant at that time he raised the question of the "voluntariness" thereof and the court held a preliminary hearing on that issue outside the presence of the jury. At that hearing Detective Reynolds testified that no threats, force or promises were used in order to obtain the statement. He stated further that he "informed him that he did not have to make a statement; that it was his constitutional right to consult with an attorney and his relatives, which were present at that time, without first telling us what had happened. The boy said that he would tell us what

happened to the best of his ability." The witness related that defendant was questioned for about 45 minutes at that time. On cross-examination it was brought out that prior to the questioning of defendant his attorney requested that he be taken before a Magistrate but the witness did not do so and "went ahead and interrogated him." Sergeant Carr testified that he arrested defendant and that shortly thereafter he stopped at a nearby intersection and picked up defendant's father and his attorney, Mr. Beal, both of whom accompanied them to the police station. He also related that no threats or promises were made to defendant, or force used in the interview at the police station. The father and Mr. Beal remained in the hallway outside the room where defendant was interrogated.

At the conclusion of the preliminary hearing the court ruled that there had been sufficient prima facie proof of the voluntary nature of the statement and that it would be "submitted to the jury." We think the ruling of the trial court was correct. While we are mindful that defendant was only 15 years old and was a person of less than ordinary mental caliber, it strongly appears that his statement was voluntarily given and there is little to support a contrary view. In the hearing before the jury the witnesses to the two subsequent interviews (including a Catholic priest) stated that no threats, force or promises were used to obtain those statements. There was evidence to indicate that prior to the questioning at the Excelsior Springs police station the prosecuting attorney told Father Moffett (who consented to be present) that he wanted to get a statement from defendant before some "shyster" saw him.

A consideration of all the evidence (both at the preliminary hearing and before the jury) would not warrant the conclusion, as a matter of law, that the confessions were involuntary. It has been said that if the evidence on that issue is conflicting it is a question for the jury. State

v. Cochran, 356 Mo. 778, 203 S.W.2d 707. In the instant case the court, at defendant's request, gave an instruction which concluded with the following: "* * * if you find and believe from the evidence that the statements, admissions or confessions of the defendant to the commission of the alleged crime were made involuntarily by the defendant, then and in those events, you will find the defendant not guilty" (the "not guilty" direction indicates the court's view that the confessions were essential to the submissibility of the State's case). The jury obviously determined that issue adversely to defendant and we think its decision should be considered final.

■ Immediately after the trial court ruled that the evidence of defendant's confession was admissible the following offer of proof was made: "Mr. Pine: At this time the defendant objects to the admission of any conversation had between Officer Verda Reynolds and the defendant in this case and we offer to show by the testimony of Mr. Dale Beal, one of the attorneys in this case and he will testify, if permitted, that—and also by the defendant's father, Mr. Falbo that they requested of witnesses Reynolds and Carr and McMeecher, who were officers of the Kansas City Police Department, who assisted in the apprehension of the defendant and that the officers agreed that if they would help in apprehending the defendant they would permit Mr. Beal and the father to advise and counsel with the defendant in private before they interrogated the defendant in this case. We further offer to prove by medical testimony that the defendant in this case was mentally ill and mentally incapable of knowing his legal rights and his constitutional rights before they had this conversation with him at the police department and that he was insane at the time he gave or made a statement to these police officers." The court ruled that such proof would not be permitted. Defendant contends that the court erred in denying defendant the opportunity of

presenting that evidence at the preliminary hearing. In regard to the offer to prove that defendant was insane on the occasions in question, we have said, in ruling a similar contention, that "the question of insanity was for the determination of the jury, and not for the court, we think the court pursued the proper and logical course in refusing to permit defendant to introduce the preliminary proof of his insanity at the time his confession was offered in evidence." State v. Church, 199 Mo. 605, 98 S.W. 16, 23[7]. See also State v. Evans, 345 Mo. 398, 133 S.W.2d 389[9].

■ The evidence as to defendant's sanity during the period of time he made said admissions was conflicting and hence not conclusive either way. We agree that if the evidence established as a matter of law that a defendant was insane at the time of making a confession such should not be admitted in evidence. See State v. Campbell, 301 Mo. 618, 257 S.W. 131. However, in 22 C.J.S. Criminal Law § 828, p. 1451, it is said that "A confession is not ordinarily inadmissible on the ground of accused's alleged insanity where his sanity is a primary issue in the case." The jury heard a great deal of evidence concerning defendant's mental condition and was instructed that it could take into consideration "his state of mind and mental condition" in determining whether the confessions were voluntarily made by defendant. In the instant case it was obvious that if the confessions were inadmissible the State would not make a submissible case. In that situation defendant was not prejudiced by the court's refusal to hear evidence concerning his insanity on the preliminary hearing. The court apparently adopted the practical course of permitting the jury to hear all of the evidence upon that issue and (since there was no showing of insanity, as a matter of law, at the time of the confessions) to consider the same in determining the issue as to the voluntary nature of the confessions. No reversible error appears in that connection.

We are also of the opinion that no reversible error was committed by the court in refusing to permit defendant to show, at the preliminary hearing, that the officers refused to permit Mr. Beal and defendant's father to advise with defendant in private before he was interrogated. In that connection we mention that there was evidence that defendant had been in the car with his father and Mr. Beal after his arrest and was offered the right to consult with them at the time of the interrogation but did not ask to do so. The trial court was apparently of the opinion that proof of the facts stated in the offer would not cause it to change its prior ruling that the confession was admissible. In that situation defendant was not prejudiced by the ruling.

The next contention of defendant is that the court erred in overruling his motion for judgment of acquittal because the State failed to present proof of the corpus delicti, independent of defendant's confessions, and hence the confessions were not admissible, and, in the absence of said confessions, the evidence was not sufficient to warrant a submission of the case to the jury. We will accordingly consider whether the evidence of defendant's admissions should have been excluded for the reason indicated.

"In murder, the corpus delicti consists of two elements: (1) The death of the person alleged to have been murdered, and (2) the criminal agency of someone other than deceased causing the death. State v. Lyle, 353 Mo. 386, 390, 182 S.W.2d 530, 532; State v. Payne, 331 Mo. 996, 1003, 56 S.W.2d 116, 118; State v. Meidle, Mo.Sup., 202 S.W.2d 79, 80. It is undoubtedly the rule that confessions of a crime not made in open court or before a committing magistrate and without proof aliunde that a crime has been committed will not sustain a conviction. However, it is equally well established that full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required. State v. Kauffman, 329 Mo. 813,

46 S.W.2d 843; State v. Skibiski, 245 Mo. 459, 150 S.W. 1038; State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523. As said in State v. Thompson, 333 Mo. 1069, 1080, 64 S.W. 2d 277, 282, 'On the contrary, what seemed to be only slight corroborating facts have been held sufficient. State v. McGuire, 327 Mo. 1176, 39 S.W.2d 523.'

"The Skibiski case, supra (which is a leading case), after declaring that full proof of the corpus delicti independent of the confession is not required, continues thus, 150 S.W. loc. cit. 1039: 'If there is evidence of corroborating circumstances which tend to prove the corpus delicti and correspond with circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved in a given case. (Citing cases.)' And in State v. Morro, 313 Mo. 98, 108, 281 S.W. 720, 722, the rule was put this way: 'If there is evidence of corroborating circumstances which tends to prove the crime and corresponds with circumstances related in his confession, both the circumstances and the confession may be considered in determining whether the corpus delicti is sufficiently proved. If a confession is made which enables the state to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be sufficient, independent of the confession, to establish complete proof that the crime is committed.'" State v. McQuinn, 361 Mo. 631, 235 S.W. 2d 396, 397. See also State v. Haun, Mo. Sup., 324 S.W.2d 679, and State v. Francies, Mo.Sup., 295 S.W.2d 8.

We have considered the evidence in the light of the rules stated in the foregoing cases and have concluded that there were facts and circumstances shown, independent of defendant's admissions, which tend to prove the corpus delicti and correspond with facts stated in the admissions and that such are deemed sufficient to render the confessions admissible in evidence.

The fact of Shirley's death and the finding of her body are undisputed. She was

last seen alive, in the company of defendant, going into the woods in the direction of the spot where her dead body was found approximately two hours later; defendant was found twelve hours later hiding in an excavation several miles from his home; in his confession defendant stated that he broke a piece of timber off of a larger piece as they went into the woods and the sheriff testified that he found a stick answering that description at the place where Shirley's body was found, and found the piece it was broken from at the place where defendant said "he broke it off." Also, in corroboration of statements in the confessions, the body was found concealed in the weeds and brush, was unclothed except for a T-shirt, and there were scratches on various parts of her body, bruises on her right hip and left knee, and a small laceration near the vagina. As indicated, we consider that the facts and circumstances herein detailed were sufficient to render the confessions admissible. It follows from that ruling that the court did not err in overruling the motion for judgment of acquittal.

The remaining contentions of error relate to the instructions. The first point in that respect is that the court erred in failing to define the offense of murder in the second degree. We observe that Instruction No. 4 required a finding of every fact essential to a conviction for murder in the second degree and, upon a finding of such facts, directed a verdict of guilty for said offense. Words and phrases appearing therein such as "wilfully," "feloniously," "premeditatedly," "deliberately," and "malice aforethought" were all defined in Instruction No. 1. We rule that the instructions were sufficient in the respect complained of without including a formal definition of murder in the second degree. State v. Swisher, 364 Mo. 157, 260 S.W.2d 6; State v. Jones, Mo.Sup., 227 S.W.2d 713. In support of his contention defendant has cited State v. Myers, 221 Mo. 598, 121 S.W. 131; State v. Murphy, 292 Mo. 275, 237 S.W. 529, and State v. Harris, Mo.Sup.,

313 S.W.2d 664. An examination of those cases reveals that they are not in point.

Defendant next complains of error in Instruction No. 3 (submitting first degree murder) primarily because the submission was in the usual form and did not submit the theory of murder while attempting to perpetrate rape as alleged in the indictment. What we have heretofore said in disposing of defendant's attack on the indictment really disposes of the instant contention. Moreover, we need not review contentions relating to that instruction because such were not mentioned in the motion for new trial and for the further reason that defendant was not convicted under that instruction. State v. Sterling, Mo. Sup., 72 S.W.2d 70.

Instruction No. 4 submitting murder in the second degree read, in part, as follows: "The court instructs the jury that if you do not find the defendant, Salvatore Falbo guilty of murder in the first degree, as defined in Instruction No. 3, but if you do find and believe from the evidence and beyond a reasonable doubt that the defendant, Salvatore Falbo, while sane, on the 25th day of June 1957, in Clay County, Missouri, wilfully, feloniously, premeditatedly, and of his malice aforethought, but not deliberately, did place his hand over the nose and mouth of the said Shirley Kyle * * *." Defendant contends that the instruction is erroneous in a number of respects. It is first said that by using the words "while sane" it told the jury that defendant was sane at the time in question and also "singled out with undue prominence one of the important issues." Furthermore, perhaps inconsistently, defendant complains that the instruction did not contain a qualifying phrase advising the jury that it could find defendant guilty under the instruction unless it found that he had "been insane as defined in other instructions."

The instruction complained of was not required to refer to the defense of insanity. A finding that the act was done "wilfully,

feloniously, premeditatedly and of his malice aforethought" was equivalent to a finding that defendant was not insane. State v. Murphy, 338 Mo. 291, 90 S.W.2d 103; State v. Sapp., 356 Mo. 705, 203 S.W.2d 425; State v. Baker, Mo.Sup., 277 S.W. 2d 627. While not necessary, the fact that the instruction required a finding that defendant was sane is an element which made the instruction more favorable to defendant than was required. Moreover, it did not tell the jury that defendant was sane. The jury was directed to *find* that defendant, *while sane,* did the acts charged.

In addition to the foregoing complaints defendant says that the instruction was misleading and confusing because it was so worded as to indicate to the jury that it was its duty to either find defendant guilty of murder in the first degree or murder in the second degree. While the first part of the instruction was ineptly phrased we do not think it would mislead the jury as to its duty thereunder. It tells the jury that if it *does not* find defendant guilty of murder in the first degree but *does* find the required facts and elements constituting murder in the second degree it will find defendant guilty of that offense. Moreover, we note that the first degree instruction concluded with the direction, "and unless you find the facts to be you should not find the defendant guilty of murder in the first degree," and that the instant instruction was likewise concluded with the words, "and unless you find the facts to be you should find the defendant not guilty of murder in the second degreee." We have decided that Instruction No. 4 was not prejudicially erroneous in the respect herein mentioned.

■ The last contention relating to Instruction No. 4 is that it was erroneously given because "it was not shown by the evidence, independent of the proposed confessions of defendant that the deceased's death was caused by the defendant, no facts were shown by the evidence to corroborate the proposed confessions of defendant to the commission of the act."

What we have heretofore said in connection with defendant's contention that the State failed to present sufficient independent proof of the corpus delicti adequately disposes of the instant contention and it is accordingly ruled adversely to defendant.

■ The final contention of defendant is that the court erred in giving State's Instruction No. 5 relating to the defense of insanity. The primary objection of defendant relates to the use of the word "murdered" in the first paragraph thereof which reads as follows: "The court instructs the jury that if you find and believe from the evidence beyond a reasonable doubt as required and defined in other instructions in this case that the defendant murdered Shirley Kyle, then you will consider whether he was sane or insane at the time of the commission of said act." Defendant asserts that said paragraph eliminated the theory of defendant's innocence and his defense of insanity. His reasoning seems to be that under said instruction the jury could not consider the defense of insanity unless it had first found defendant guilty of murder; that he could not be found guilty of murder without being found sane and hence under the wording of said instruction the jury could not consider the insanity defense.

The instruction, of course, should have used the word "killed" instead of "murdered." However, when the instruction is considered in its entirety, together with all of the other instructions, we think any reasonable jury would have concluded that the word "murdered," as so used, was intended to mean "killed" or some equivalent term. Certainly the jury would not have considered that the use of the word "murdered" withdrew from its consideration the defense of insanity, because, immediately following the word is a specific direction to consider "whether he was sane or insane at the time." The remainder of the instruction explains the defense in detail and the second and third paragraphs conclude with the direction that the jury acquit the defendant upon the ground of insanity

in the event it makes the findings therein specified. Furthermore, we note that in the third paragraph of the instruction the jury is directed that if it "find from the evidence that at the time the defendant committed the killing charged in the indictment" etc. We think that statement would tend to explain to the jury the true meaning of the court in using the word "murdered" in the first paragraph.

 We also notice that the court gave Instruction No. 8 on the question of insanity at the request of defendant and that said instruction contained the phrases, "at the time of the commission of the offense mentioned in evidence," and "with reference to the offense charged." "Offense" as used therein could only refer to murder. It would therefore seem that the defendant's instruction contained the same fault as Instruction No. 5 and hence defendant would not be in a position to complain thereof. State v. Martin, Mo.Sup., 56 S. W.2d 137. We have concluded that the use of the word "murdered" in Instruction No. 5 did not constitute reversible error.

The defendant also contends that the first paragraph of said instruction constitutes a direction to the jury to find defendant guilty of murder. We are unable to find any reasonable basis for that contention and it is accordingly overruled.

The second paragraph of said instruction refers to the fact that insanity should "be proven by the preponderance" of the evidence. The sixth paragraph reads as follows: "The court further instructs the jury that before you can acquit the defendant on the ground of insanity the fact of existence of such insanity at the time of the commission of the crime charged, if you so find, must, before you can acquit said defendant on that ground, be established by the preponderance or by the greater weight of the evidence." Defendant contends that the requirement as to burden of proof was over-emphasized and that the sixth paragraph was confusing and misleading because the phrase "before you can acquit" was stated twice therein. We have carefully considered that contention and while the sixth paragraph is not aptly worded, and the instruction does make a number of references to the subject of burden of proof, we have concluded that the instruction is not reversibly erroneous in that respect.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial, or presented in the brief, discloses no error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.