EVELYNE GILDEHAUS, Appellant, v. HARVEY JONES, Doing Business as JONES TRUCK LINE, and JESSIE D. NEILL.—No. 39800.—200 S. W. (2d) 523.

Division One, March 10, 1947

9

Louis E. Miller, Miller & Landau and B. Sherman Landau for appellant.

Moser, Marsalek, Dearing & Carpenter and Will B. Dearing for respondents.

VAN OSDOL, C.—Action for $9,763.44 for personal injuries alleged to have been proximately caused by defendants' negligence in driving a tractor-trailer truck into collision with the automobile driven by plaintiff at the intersection of Sulphur and Chippewa Streets in St. Louis, July 14, 1945. The plaintiff's case was submitted to the jury upon negligence under the humanitarian rule; the jury returned a verdict for defendants; and plaintiff has appealed from the judgment subsequently rendered.

Plaintiff-appellant contends that, at the outset of the trial, she was placed in a prejudicial position by the disclosure to the jury of the fact she was insured against property damage to her automobile; it is said a mistrial should have been declared for that reason. Plaintiff-appellant further assigns errors of the trial court in permitting defendants-respondents to cross-examine plaintiff concerning her marriages, and concerning another claim for personal injury; and in the refusal of plaintiff-appellant's proffered Instruction No. 1.

Plaintiff's petition was originally in two counts, for personal injuries and for damage to her automobile. Plaintiff had a contract of insurance protecting her against property damage to her automobile, and the Insurance Company was permitted to intervene in the action upon a theory of subrogation. Thereafter, plaintiff dismissed the count for property damage, whereupon the court entered an order rescinding the order permitting the Insurance Company's intervention. These orders were entered in the Assignment Division (Division No. 1, Circuit Court of the City of St. Louis). Counsel for the Insurance Company did not understand the order allowing intervention had

been rescinded, and appeared in the trial court (Division No. 7) and made an opening statement telling the jury of Insurance Company's intention to prove that plaintiff had a contract of insurance under the terms of which her car was insured for $675; that the car was damaged to the extent of $475 of which plaintiff, under the terms of the policy, was to pay the first $22.50; and that the Insurance Company had an interest "in that automobile to the extent of $452.50." The judge of the Assignment Division, having learned counsel for the Insurance Company had failed to apprehend the order permitting intervention had been rescinded, appeared near the trial courtroom and signified a wish to speak with the trial judge and counsel in chambers. The trial judge and his official reporter, the judge of the Assignment Division, and counsel retired to the trial judge's chambers; the judge of the Assignment Division reiterated the ruling rescinding the order allowing Insurance Company's intervention; and the trial judge announced the Insurance Company would not be permitted to further participate in the trial. (Counsel for the parties, plaintiff and defendants, do not agree as to the import of further conversation between the trial judge and counsel for the parties.) ▊ The trial judge and reporter, and counsel for the parties plaintiff and defendants then returned to the trial courtroom and into the presence of the jury; and the trial judge orally advised the jury that "at the beginning or outset of the trial, we had three parties litigant; there are now remaining only two of those parties, namely, the lady here as plaintiff, and Jones and the driver as the defendant." The trial court further told the jury the Insurance Company was no longer in the case, "not by reason of anything done by the parties to this litigation but by reason of a legal ruling" made by the judge of the Assignment Division; and that they, the jury, were not to "take into consideration in any manner whatsoever the question of any damages to the automobile involved in the accident, property damage." Plaintiff objected to the action of the court in orally stating to the jury "that the element of property damage is out of the case for the reason that the statement would imply that some arrangement or agreement had been reached by or between the parties . . . to settle or dispose of the plaintiff's claim for damages to her automobile." Plaintiff in her motion for a new trial assigned error of the trial court in refusing "plaintiff's request to discharge the jury after orally instructing the jury in substance and effect that the question of insurance was no longer in the case."

▊ No request for a declaration of a mistrial, because of any question of insurance being prejudicially present in the case, shows in the transcript of the record as originally prepared by the court reporter and tendered to counsel for their approval. Upon the record as shown by the transcript as originally prepared, the error assigned herein (of refusing to declare a mistrial on the ground plaintiff's in-

12

surance was prejudicially present in the case) should not be considered herein upon appeal because such transcript does not show plaintiff's counsel made known to the court that plaintiff desired the declaration of a mistrial upon that ground (Civil Code of Missouri, sec. 122, Laws of Missouri 1943, p. 389, Mo. R. S. A. sec. 847.122); however, plaintiff's counsel refused to agree to the transcript so prepared, contending a request for a mistrial upon that ground had been made in judge's chambers, and filed a motion (supported by affidavits) to correct the transcript to so show. The trial court considered the motion and supporting affidavits, and heard the testimony of the reporter upon the question; overruled the motion to correct the transcript; and certified the transcript, as originally prepared and tendered by the reporter, to be a correct transcript of the proceedings in the cause. Plaintiff contends that, "under the circumstances," the request for a declaration of a mistrial should have been shown in the transcript, and that the trial court erred in overruling plaintiff's motion directed to that end.

Where a full transcript of the record upon appeal is filed, it is not necessary for the trial judge to authenticate it, if it is agreed to by the parties. Of course, if they cannot agree as to any part of it, the difference must be settled by the judge and he must sign it. Connoley v. Beyer Crushed Rock Co. et al., 355 Mo. 684, 197 S. W. 2d 653; State ex rel. National Outdoor Advertising Co. v. Seehorn, 354 Mo. 170, 188 S. W. 2d 657. See also Appellate Provisions of the 1943 Civil Code Act, Honorable Laurance M. Hyde and Honorable James M. Douglas, 15 M. B. J. 56, at page 60.

We hold the transcript of the record as originally prepared by the reporter which is authenticated by a certificate signed by the trial judge, and transmitted to this court under the seal of the clerk of the trial court, is to be considered true and quite as if the parties had agreed to it. Civil Code of Missouri, sec. 135(a), Laws of Missouri 1943, p. 393, Mo. R. S. A. sec. 847.135(a). The trial judge's authentication of the full transcript of the record, like a trial judge's settlement of the former bill of exceptions, which settlement was tantamount to the approval of the bill, should be considered the act of the trial judge as a judge and in the exercise of a judicial power, his action to be dependent on his memory and existing aids. In the authentication of the full transcript, the trial judge acts under the solemnity of his official oath, and we will presume he has faithfully and honestly performed his duty. State v. Munch, 57 Mo. App. 207; Bauman v. C. I. T. Corporation, 356 Ill. 336, 190 N. E. 696; In re Bills of Exceptions, 37 F. 2d 849; State ex rel. Mendenhall v. Garvin, 87 Ind. App. 426, 166 N. E. 671; 4 C. J. S., Appeal and Error, sec. 840, p. 1319.

(If anything material to an appeal is omitted from the transcript by error or accident or is misstated therein the parties may correct

the transcript by stipulation or, in the event the parties are unable to agree, a party is not without remedial means to effect a correction —resort may be had to Certiorari to Correct Record as recognized by Supreme Court Rule 1.03.)

Plaintiff, whose maiden name was Williams, has been twice married. Her first marriage was to one Charles Robert Boshart; and she was married to Edward Albert Gildehaus December 26, 1940. Defendants elicited this information from plaintiff on cross-examination and over plaintiff's objection (which objection was renewed and overruled at the conclusion of all the evidence). The trial court overruled the objection conditionally upon the statement of defendants' counsel that the interrogation was for the purpose of identifying plaintiff "with reference to certain periods of her life, which I believe will be very material, under different names."

The right of cross-examination to a limited degree extends to collateral matters. A witness may be asked questions, the answers to which may tend to degrade him and affect his credibility. The extent of such an examination rests largely within the discretion of the trial court. However, the number of times a witness has been married does not affect his credibility as a witness; and, in a case where the number of marriages of a party, is foreign to any issue before the court and jury, it is, of course, not error to deny cross-examination relating to the party's marriages for the purpose of impeachment. See Bush v. Kansas City Public Service Co., 350 Mo. 876, 169 S. W. 2d 331, cited by plaintiff. And where a party has been cross-examined relating to his marriages and the question of his marriages is foreign to the issues before the court and jury, the cross-examiner cannot impeach the witness by showing he testified differently in another trial. See Khan v. Zemansky et al., 59 Cal. App. 324, 210 P. 529, also cited by plaintiff.

In the instant case it does not appear defendants inquired concerning plaintiff's marriages with the purpose of discrediting her by exposing her marital difficulties, nor does it appear defendants introduced evidence tending to show plaintiff's testimony relating to her marriages was false. The plaintiff's maiden name and her marriages with consequent changes in name were only apparently foreign to the issues of the instant case. Actually the evidence of plaintiff's name at particular times prior to the collision became relevant and was rendered admissible for the purpose of making more definite and certain the evidence subsequently introduced by defendants upon the issues relating to plaintiff's physical condition and the nature and extent of her injuries. See generally Vol. I, Wigmore on Evidence, 3d Ed., secs. 13-14, pp. 299-303. The issues of defendants' negligence and of the nature and extent of plaintiff's injuries were strenuously contested in the trial of the cause. Plaintiff had alleged "the shock, trauma and violence of the collision induced menstrual

14

hemorrhage and disorder'' and during trial her petition was amended to add in sequence, ''and a fibroid tumor of the uterus.'' Plaintiff testified that her menstrual cycle had been normal prior to the collision, and that thereafter her menses have occurred about every ten days and the bleeding has been excessive, resulting in loss of weight and physical weakness. Prior to the trial plaintiff had testified by deposition, and she again testified at the trial, that she had never been treated by a physician ''except my family physician at Topeka, Kansas, sixteen years ago''; and she testified at the trial she had never had (and had never been treated by a physician for) any ''female disorder.'' A physician, witness for defendants, testified that a physical examination disclosed plaintiff suffers ''two or more nodular firm myomata—that is fibroid tumors, muscle tumors of the uterus . . . has been there for some years.'' He said the fibroid tumor would have ''a bearing or effect upon the menstrual cycle.'' Another physician, witness for defendants, testified of having treated plaintiff several times beginning as early as 1938; she complained to him of a ''female condition,'' and his physical examination of her revealed ''an abnormality'' existed—he had not treated an Evelyne Gildehaus but identified plaintiff as having been his patient, Evelyne Williams. Plaintiff also admitted on cross-examination that she had consulted two other physicians during her second marriage. It is true there was no evidence introduced of any physician's treatment of plaintiff as Evelyne Boshart and, considered strictly, the evidence introduced did not render relevant the fact of plaintiff's marriage to Boshart.

Defendants, of course, were entitled to refute, if they could, plaintiff's claim (and her testimony tending to show) the fibroid tumor and the acceleration and profuseness of her menses were due to trauma experienced in the collision. Evidence of the prior treatment of plaintiff by physicians for female disorders was not immaterial to the issues of the instant action—such evidence was material to the issues upon the cause of plaintiff's physical condition and of the nature and extent of her injuries; and the evidence introduced by defendants of plaintiff's prior treatment for a physical condition which she had alleged and testified was caused by the collision, being evidence as to a material fact and in conflict with plaintiff's testimony relating to the material fact, was also admissible in a purpose to impeach plaintiff's credibility as a witness.

It is our opinion, considering the issues of the case and plaintiff's testimony negativing her ill health prior to the collision, that the trial court was not in error in refusing to circumscribe defendants in their endeavor to make sure and definite demonstration to the jury that the testimony of the treatments by the various physicians and of the condition of their patient was testimony of the treatments and of the condition of plaintiff.

Attending now plaintiff's contention of error in permitting the cross-examination of plaintiff concerning a claim for personal injury—the following questions and answers were asked and given in defendants' cross-examination of plaintiff,

"Q. Didn't you file a suit against the Public Service Company under the name of Evelyn Williams? A. No, sir, I did not. Q. Didn't? A. No, sir. Q. Didn't settle with them? A. No, sir, never did. . . . Q. As a matter of fact, wasn't I representing the Street Railway Company at that time and didn't I settle the case with your attorney? A. No, sir; I don't remember ever seeing you before. Q. Never remember seeing me? A. No, sir. Q. Your name was Evelyne Williams? A. That's right."

In fact another person, Evelyn Williams, had filed the claim to which defendants' counsel was alluding and he, upon discovery of his mistake, asked permission "to make a statement concerning a matter in connection with this file." (Defendants' counsel was referring to the file of the claim of Evelyn Williams against the Public Service Company.) Plaintiff's counsel requested the statement be made under oath. Defendants' counsel was thereupon sworn, and explained,

"In connection with the preparation of this case, I read over the deposition given by Mrs. Gildehaus and found that she had testified that she had not been involved in any prior accident or not been under the care of any doctor for a period of sixteen years. Upon further investigation, I ascertained that a suit was filed against the St. Louis Public Service Company on January 15, 1931 . . . and that this case was thereafter settled and a stipulation suggesting the majority of the plaintiff was filed in the Circuit Court on August 21, 1935. Upon examining the admitted signature of the plaintiff in this case, which appears on Defendants' Exhibit 1, with the signature appearing in the court file, signed Evelyn Williams, I have concluded, in fairness to the Court and the jury, that these parties are not the same."

The explanation was in the presence of the jury. The explanation was forthright and unequivocal. Although we do not rule the instant contention of error, it would ▮ seem counsel's frank confession of his mistake should have purged the implication of the questions. However, plaintiff made no objection to the questions when asked, and she did not object and request (after the explanation was made by defendants' counsel, at which time the irrelevance of the inquiry became obvious) that the jury be admonished to disregard the inquiry relating to the claim; or that defendants' counsel be reprimanded; or that a mistrial be declared; or that any action whatsoever should be taken by the trial court. Plaintiff's contention has not been preserved for review. Civil Code of Missouri, sec. 122, supra.

16

As stated, plaintiff contends the trial court erred in refusing plaintiff's proffered Instruction No. 1 (the refused instruction is not to be confused with the *given* plaintiff's Instruction No. 1),

"The Court instructs the jury that if you find and believe from the greater weight of the credible evidence the facts to be as outlined in (given) Instruction No. 1, then the plaintiff has met and carried the burden of proof required of her under the law and under the instructions herein."

At defendants' instance the trial court instructed the jury (Instruction No. 3),

"The court instructs the jury that the burden is on the plaintiff to prove her case by a preponderance or greater weight of the credible evidence, *and unless she has done so, your verdict must be for the defendants.*

"By preponderance of evidence is meant evidence which is more convincing and worthy of belief than that offered in opposition thereto." (Our italics.)

Plaintiff contends that Instruction No. 3 would have been a fair declaration of the law if the clause we have italicized had been omitted; that the giving of (refused) Instruction No. 1 would have complemented Instruction No. 3 and completed the applicable statement of law; and that the two instructions, when read together, would have properly and fairly advised the jury, neutralizing the vice which plaintiff assumes is implicit in the cause italicized.

The trial court in giving defendants' Instruction No. 3 was apparently observing the language of this court in the case of Mitchell v. Dyer, Mo. Sup., 57 S. W. 2d 1082, quoted and approved in Rouchene v. Gamble Construction Co., 338 Mo. 123 at page 134, 89 S. W. 2d 58 at page 63, "A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do." We do not have a criticism of the case of Mackler v. Barnert, Mo. App., 49 S. W. 2d 244, cited by plaintiff, which case holds the burden of proof is upon plaintiff in a res ipsa loquitur case (see McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557); nor do we criticize the ruling in the Mackler case that a trial court erred in refusing an instruction properly so placing the burden of proof in such a case. In the instant case the burden of proof was upon plaintiff, as the court properly instructed. Rouchene v. Gamble Construction Co., supra; Mitchell v. Dyer, supra. While we do not rule the giving of plaintiff's (refused) Instruction No. 1 would have been error, nevertheless we see that, by plaintiff's given principal Instruction No. 1, the jury was instructed, "if you find and believe from the preponderance or greater weight of the credible evidence" the facts as hypothesized in the instruction "then your verdict will

be in favor of the plaintiff and against the defendants." We do not follow plaintiff's argument that the trial court did not complete "the applicable statement of law."

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.