**Marion V. AYRES, Appellant,**

v.

**Virgil Guy KEITH, Respondent.**

No. 48684.

Supreme Court of Missouri,

Division No. 2.

March 12, 1962.

Motion for Rehearing or for Transfer to Court en Banc Denied and Opinion Modified on Court's Own Motion April 9, 1962.

William R. Kirby, St. Louis, for appellant.

W. Munro Roberts, Jr., James J. Sauter, Heneghan, Roberts & Cole, St. Louis, for defendant-respondent.

EAGER, Presiding Judge.

Plaintiff sought damages in the sum of $20,000 for personal injuries sustained when, as a pedestrian, he was struck by defendant's car. The jury returned a verdict for defendant, hence this appeal. Plaintiff, a man sixty-five years of age, was engaged in selling newspapers at the intersection of Grand and Gravois in the City of St. Louis; he had boxes at the southeast and northwest corners. Grand Avenue runs generally north and south; Gravois, with six traffic lanes, crosses it at a somewhat oblique angle, running slightly northeast-southwest. There were traffic lights at all corners. The injury occurred at about 7:45 a. m. on September 15, 1959, when traffic was very heavy. At this hour the city had marked off, as was usual at such times, an additional lane for eastbound (downtown) traffic by putting out yellow rubber markers; in other words, the inside westbound lane was specifically marked for eastbound traffic during the morning rush hour.

A pedestrian crosswalk, ten feet wide, ran north and south across Gravois just east of Grand, the westerly edge being a continuation of the easterly curb line of Grand. This walk was marked by rectangular white blocks set into the paving. At the center of Gravois was a "midway" or safety zone, sometimes also described as a "V-Box." This was formed by five traffic buttons and connecting white lines; two of the buttons, each fourteen inches in diameter, were placed abutting each other in the west edge of the crosswalk; two others were similarly placed in the easterly edge, ten feet east; the portion of the street so set off was a rectangle ten feet by twenty-eight inches. Another traffic button was placed fifty feet to the east in the center of Gravois; from this white lines were painted to connect with the easterly corners of the rectangle. Thus, the lines came more or less to a point at the east. The obvious effect of this "V" arrangement was to divert traffic away from the rectangular zone.

On this occasion plaintiff had started across Gravois from south to north, and he had reached the center; there the light had turned red against him and he had stopped. Defendant was driving easterly, in the additional lane for downtown traffic, and was thus *north* of the midway. Plaintiff testified that while he was standing in the rectangle between the four buttons, and facing "mostly east" watching traffic going west, he was struck by defendant's car; that he fell somewhat east of the crosswalk, and at least partly in the extra traffic lane. Defendant was driving at about 15–20 miles per hour in heavy traffic. He testified: that the light was green for him at this intersection; that he had already crossed the intersection when he first saw plaintiff, that the back of his car was then 25–30 feet past the intersection, and that plaintiff was standing on the "double white line" about 20–25 feet ahead, facing south; that plaintiff suddenly turned and started to run north; that he, defendant, swerved and applied his brakes, but that plaintiff ran into his right front fender; that he stopped in about 15–20 feet; that plaintiff was lifted and spun a little by the impact as he struck the car, and that he lay practically on the center lines. There was a slight indentation on the right front fender of defendant's car, 23–24 inches back of the headlight. The only other eyewitness, a Mr. Widmer, was driving east in the regular lane next to and south of the center of Gravois. He testified: that when he was just east of the center of Grand he saw plaintiff standing on the center strip of Gravois and, as he recalled, at the "extreme eastern

edge of the crosswalk," facing northeast; that suddenly he moved two or three steps north and east into the extra lane, and collided with the side of the right front fender of the car; that he did not see plaintiff look toward the eastbound traffic; that the car stopped in 10–15 feet, and that plaintiff was lying completely within the extra traffic lane; that he, Widmer, stopped because the traffic stopped, but that he did not get out of his car. Widmer later notified police that he had witnessed the accident.

A traffic engineer for the city described the midway and the crosswalk; he testified, over objection, that the pedestrian refuge is "between those buttons" and also testified at another point, without objection, that pedestrians are to cross in the crosswalk and stay in that area. It is not controverted that the traffic light for defendant was green at the time in question and red for plaintiff. It is also not controverted that there was a dent (or dents) on the right side of defendant's fender, and that no damage to the front of his car was demonstrated. The fibula in plaintiff's right leg, being the smaller of the two bones below the knee, was fractured. It will not be necessary to detail any of the medical evidence.

◼ The first two points of alleged error made by plaintiff involve defendant's Instructions 5, 6 and 7. Only general objections were made when the instructions were given. In plaintiff's motion for new trial nine assignments of error were made on Instruction 5, the same assignments on Instruction 6, and the same assignments, with two omissions, on Instruction 7. We have considered these assignments under our Rule 79.03, V.A.M.R., which provides that in such event "specific allegations of error" in the instructions must be set out in the motion. This rule has now been in force for nearly two years. The intent is that both the trial court and the appellate court may know specifically what the objections are, and that the appellate court may know that they have been presented

to the trial court. See, generally, Sullivan v. Hanley, Mo.App., 347 S.W.2d 710; Hotchner v. Liebowits, Mo.App., 341 S.W. 2d 319. Without quoting all the assignments, we note that they assign the following: that the instruction thus attacked is "not an accurate statement of the law," that it "fails to hypothesize sufficient facts to constitute a defense," that it "places an absolute duty on the plaintiff," that it gives the jury "a roving commission," that it is "an abstract statement * * not properly connected by hypothesis of facts," and that it is " * * * repetitious, unduly emphasizes and comments upon certain portions of the testimony * * *." None of those assignments point out with any degree of definiteness *what* is actually claimed to be wrong with the instruction in such a manner that the trial court and the appellate court may immediately perceive the point; nor do they in anywise assure this court that the sundry points now argued (and which have been particularized substantially) were actually presented to the trial court. They are insufficient under our rule.

We have decided to consider on the merits the contention now presented that defendant's Instructions 5 and 6 were inconsistent and in conflict. In Instruction 5 an ordinance was partially quoted which required that pedestrians should yield the right of way to drivers lawfully proceeding on a green or "Go" signal at intersections controlled by signals; the jury was then instructed (in essence) that if it found that defendant was proceeding on a green signal in the additional traffic lane and that plaintiff, while walking across Gravois "at or near the intersection" with Grand, walked from the center line northwardly against the red light into the additional eastbound lane and collided with defendant's car, and that therein he failed to exercise the ordinary degree of care (defining it), then he was negligent. Then followed the customary requirement that his negligence must have directly contributed to the injuries.

Instruction 6 quoted in part another subsection of the ordinance requiring that pedestrians crossing at any other place than a crosswalk "shall yield the right of way to drivers" and that it shall be unlawful not to do so; thereupon the jury was instructed that if it found that there was a duly marked crosswalk (describing its location), that plaintiff was walking across Gravois at a point "outside of said marked crosswalk," that he walked north from the center line into the additional eastbound lane and into collision with the fender of defendant's car, and that in so doing he failed to yield the right of way to eastbound automotive traffic, and failed to exercise ordinary care (defining such), then plaintiff was negligent. (Here followed again the requirement of contribution.)

■■■ Plaintiff says that these submissions, based upon different subsections of the ordinance and upon different evidence, were inconsistent and irreconcilable, in that the plaintiff was put in a different location in each; and that defendant was not entitled in any event to the theory of submission stated in No. 5 because it was opposed to his own positive testimony supporting an affirmative defense. This argument is premised, of course, upon the fact that defendant testified that the plaintiff was located at a point approximately 40–50 feet east of the crosswalk in the center of the street, but near the point of the "V-Box," whereas his witness Widmer placed the plaintiff at the extreme eastern edge of the crosswalk. Both, however, testified that plaintiff suddenly turned and proceeded into the extra traffic lane; and in neither instruction was plaintiff charged with negligence merely because of his position or location. Plaintiff cites, generally, two lines of authorities: (a) that a party may not submit inconsistent theories of negligence, State ex rel. Tunget v. Shain, 340 Mo. 434, 101 S.W.2d 1; Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60; and (b) that defendant may not submit a theory (Instruction 5) which is opposed to his own positive testimony in the nature of a judicial admission. Smith v. Siercks, Mo., 277 S.W.2d 521; Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743; Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S.W. 2d 696; Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470. Looking first at (b), we find that this principle is not applied to "a mere estimate or opinion" (Burris, Smith, supra) and particularly is this true of testimony concerning the circumstances of an accident, such as time, speed, distance or position, where the testimony is especially subject to inexactness. See the cases just cited, and also Stodgell v. Mounter, Mo., 344 S.W.2d 100, 102. The testimony here of plaintiff's position was definitely more in the nature of estimates or opinions than of positive statements of fact from actual knowledge. Nor, looking at (a), do we find that these instructions submitted inconsistent theories of negligence. The basic theory of each instruction was that plaintiff was negligent because he walked from a position of safety (or comparative safety) against a red light and into a zone occupied by lawfully moving traffic. His exact position was a mere detail of that theory; and while the two subsections of the ordinance differed somewhat in their precise provisions, the net result of each was that a pedestrian must not walk into a traffic lane where the traffic had the right of way, but must yield the right of way. So long as the testimony of Widmer was not basically opposed to defendant's theory, defendant was entitled to the benefit of that evidence, and to a contributory negligence submission which included it. See, generally: Anderson v. Woodward Implement Co., Mo., 256 S.W.2d 819, 822; Tomlin v. Alford, Mo., 351 S.W.2d 705. We find no substantive conflict in these instructions; the divergences were technical rather than basic. Defendant, in no sense, offered any evidence which was inconsistent with the theory of plaintiff's contributory negligence. The jury could not have failed to understand that the ultimate question for its determination was whether plaintiff suddenly turned and walked or ran from

the center of the street, against a red light, into a lane of moving traffic, and thus was contributorily negligent. Other objections now made to instructions were not properly preserved, although we do not in so ruling intimate that they are valid. We have given appellant the benefit of a very serious doubt in considering the merits of the conflict just discussed.

■■■ Plaintiff also assigned error separately as to Instructions 5, 6 and 7 in that they were, allegedly, not supported by the evidence. He has not briefed that assignment here as to any of those instructions, hence it is waived. It is also obvious that the instructions were supported by substantial evidence.

Plaintiff's next point is that the court erred in excluding two sections of the St. Louis Traffic Ordinance and in permitting a traffic engineer to "interpret provisions of this ordinance." These sections, offered at different times, were as follows: "(2) Pedestrian midways for the protection of persons crossing heavily traveled streets may be established by the Traffic Commissioner who may erect and maintain protective barriers or other devices thereat. No person shall drive any vehicle through or over any pedestrian midway." "18. Safety Zone or Midway. The area or space officially set apart within a roadway by the Traffic Commissioner for the exclusive use of pedestrians and which is protected or is so marked or indicated by adequate signs as to be plainly visible at all times while set apart as a safety zone or midway." (The latter subsection appeared under "Definitions.") Plaintiff produced a Mr. Boxdorfer, a City Traffic Engineer, whose jurisdiction included this area; he testified on direct examination: that there was a pedestrian midway on Gravois, east of Grand, also called a "V-Box"; that this is a small area in the middle of the street, "separated from the rest of the traffic by button, metal buttons"; that this is shown in aerial photo Exhibit No. 2, and also in Exhibit No. 1; that the

"establishment and maintenance of a crosswalk there" also falls under his jurisdiction; that (in the center of the street) two abutting buttons are located approximately on the curb line (extended) and two more ten feet east, so that the crosswalk runs between these pairs of buttons; that the width of the V-Box is 28 inches, the width of two buttons; that there is a single button fifty feet farther east in the center of Gravois and painted lines are extended from it to the outer edges of the two nearest buttons at the crosswalk. The latter testimony was in answer to a question— "* * * is there any other button that is a part of the V-Box or Midway"? On re-cross-examination plaintiff's counsel objected to questions which sought to have the witness describe the pedestrian portion of the V-Box, but the witness was permitted to testify without objection, in answer to a question asking the purpose of the ten-foot crosswalk, that, "It is an area in which pedestrians are to cross the street and stay in that area." The answers subsequently admitted over objections (as conclusions and as interpreting the ordinance) were to the effect that the pedestrian refuge was an area 28 inches by 10 feet in the exact center of the street, between the buttons; counsel for plaintiff again brought out that the "V" was a part of the "V-Box"; then, over objection, the witness stated that this part served "to channel cars away from the refuge * * *" and that the only part "where a pedestrian can stop is between the buttons."

■■ The controverted sections of the ordinance do not constitute any concrete definition or delimitation of a "midway." Subsection 2 of Sec. 10 constitutes merely an authority for creating such a zone; the authority was never controverted and was substantially conceded by all; the exclusion of that part of the ordinance could not possibly have been prejudicial. Subsection 18 of Section 1 was offered as contradictory to, or at least explanatory of, parts of Boxdorfer's testimony. The objections to it were that it was not pleaded and that it

was ambiguous unless explained. The objections were sustained. Plaintiff cites cases to the effect that an ordinance may be admissible as evidence, though not pleaded. Hart v. Skeets, 346 Mo. 1118, 145 S.W. 2d 143; State ex rel. Wells v. Mayfield, 365 Mo. 238, 281 S.W.2d 9; White v. Hasburgh, Mo.App., 124 S.W.2d 560. In certain instances that is true. We hold that subsection 18 was admissible here and, technically speaking, that it was erroneously excluded. But we also hold that its exclusion was not prejudicial to plaintiff. It did not constitute a specific definition, but rather left it to the Traffic Commissioner to *"set apart"* the space for a "midway," or pedestrian refuge. Plaintiff's counsel produced the traffic engineer, as a traffic expert, and had him describe: the "V-Box," as a small area separated from the traffic by metal buttons and as 28 inches wide; the width and area of the crosswalk in the center of the street; and the point or "V," *as a part of the "V-Box."* Counsel permitted this witness to state on recross, without objection, that pedestrians were to cross in the crosswalk and *stay in that area.* Having voluntarily opened up the subject of the midway or V-Box, its lines, markers, area and delineation, and having permitted the witness to say that pedestrians should stay within the crosswalk (which at that point was the rectangular area of the midway), we hold that plaintiff is in no position to complain of the testimony subsequently admitted describing the extent of the refuge area and the purpose of the "V." We regard this as legitimate cross-examination in a field already explored by plaintiff. In this situation the subsection of the ordinance could add nothing to the evidence already in, nor would it have detracted from that evidence by way of contradiction or explanation. The answers objected to were no more conclusions than other portions of the testimony brought out or permitted by the plaintiff. And these, if conclusions, were conclusions of an expert. There was no error in the rulings on Boxdorfer's testimony.

There is an additional reason why the ruling on Subsection 18 of the ordinance as well as the rulings on the testimony of Boxdorfer were not prejudicial. The essential question which the jury decided was whether or not plaintiff suddenly turned and stepped out into traffic which was proceeding with a green or "go" signal, and whether this constituted negligence. If plaintiff did this (and the jury evidently found that he did) it would make no essential difference under all the evidence, whether he stepped from that part of the "V-Box" within the crosswalk, or whether he stepped from the "V" or point. The court had correctly instructed the jury that in either such event the plaintiff would have been negligent. No witness but plaintiff himself testified that he was in *any part* of the "V-Box" or midway when he was struck or collided with the car, and plaintiff definitely testified that he was then within the crosswalk lines. The whole question of the "V" area and the precise extent of the pedestrian refuge was more or less of a "red herring." There was no prejudicial error in any of these rulings.

The last point made concerns the cross-examination of plaintiff from a deposition taken in a suit for personal injuries previously filed by him against a third person. In the present suit he admitted three prior injuries,—one in 1946 for which a Workmen's Compensation claim was filed, one in 1951 while working for the City of St. Louis, and one in 1958 when he fell down some stairs. All of these involved his back. He also claimed a back injury in the present suit, but the court ultimately excluded that part of the claim as not established by substantial evidence. In the cross-examination of plaintiff in the present trial, counsel for defendant produced his deposition taken in a suit for the 1958 fall; plaintiff stated that he recalled the deposition being taken but that he had never read it. He was asked if he recalled certain questions and answers, as read, concerning the injury for which that suit was filed and he stated that he did. Counsel for defendant was

then permitted, over the objection of immateriality, to ask plaintiff whether he recalled being then questioned concerning his prior injuries; he replied that he did, recalled that he told of his 1951 injury, but also recalled that he did not tell of the "1946 accident." He stated that the reason for the latter was that "he forgot," although he now remembered it. This evidence was offered by defendant on the theory that it affected plaintiff's credibility. We find that no objection was made to the specific method used in this part of the interrogation, although counsel now refer to the procedure as improper; nor was any objection made on the ground that the deposition had not been signed. In the present case plaintiff told of the 1946 injury on direct examination, as well as on cross-examination.

The point now made is that this prior testimony did not involve a matter material to the issues of the present case; plaintiff cites authorities to the effect that evidence of prior statements against interest must concern material facts. Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618; Kaley v. Huntley, Mo.App., 88 S.W.2d 200; Westinghouse Electric Supply Co. v. Binger, Mo.App., 230 S.W.2d 166; Bush v. Kansas City Public Service Co., 350 Mo. 876, 169 S.W.2d 331. The situation here does not really involve the materiality or immateriality of the truth of a *fact* as, for instance (Bush, supra), how many times plaintiff had or had not been married. The evidence introduced went merely to the accuracy, the memory, and the credibility of plaintiff as a witness. A very considerable latitude is permitted in cross-examination, particularly of a party, although this is subject largely to the discretion of the trial court. Anderson v. Woodward Implement Co., Mo., 256 S.W. 2d 819; State v. Hartwell, Mo., 293 S.W. 2d 313; Gildehaus v. Jones, 356 Mo. 8, 200 S.W.2d 523; State v. Thompson, Mo., 280 S.W.2d 838; Maul v. Filimon, Mo.App., 315 S.W.2d 859. The prior testimony received here was not entirely "unrelated" (as plaintiff suggests) to the issues of the present case, since it concerned the matter of previous injuries and plaintiff's stated recollections thereof; and it immediately followed a recital of his prior, detailed testimony of the 1958 injury, most of which came in without objection. The admission of this evidence was certainly permissible in the discretion of the trial court.

Subsequently, plaintiff's counsel offered portions of plaintiff's deposition in the present case to prove that he *had* told therein of the 1946 injury. This occurred after the court had sustained an objection to a question seeking to elicit that information. These questions and answers were offered as rehabilitation of the witness, counsel explaining that they would show that plaintiff had not concealed the 1946 injury until the trial of the present case. The offer was excluded. Counsel argue that a party always has the right to read portions of a deposition to explain those parts which the opposing party has read, citing Binion v. Armentrout, Mo., 333 S.W.2d 87, 92. That question is immaterial here. The principle involves reading from the *same* deposition, and plaintiff clearly had the right to read any and all explanatory portions of the prior deposition, if there were any. The further argument is made that the evidence from the later deposition was admissible as rehabilitation, citing McElhattan v. St. Louis Public Service Co., Mo., 309 S.W.2d 591. We need not discuss here in detail the principles of a permissible rehabilitation. There is no occasion for the rehabilitation of a witness when he has simply admitted that on a prior occasion he forgot to tell about something. No amount of additional evidence could remove or obliterate the fact that the witness had then failed to tell of the 1946 injury. The fact that he remembered and told of it in a later deposition would not have that effect, nor would it even be relevant. See, generally, Williams v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 659, 665. The principle of rehabilitation involves evidence of the truth

or falsity of an issuable fact; where a witness has been impeached by proof of a prior statement inconsistent with his present testimony, rehabilitation is permitted by proof of consistent statements made prior to those constituting the impeaching testimony. State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667; State v. Emrich, Mo., 252 S.W.2d 310; State v. Emrich, Mo., 250 S.W.2d 718; Lach v. Buckner, 229 Mo.App. 1066, 86 S.W.2d 954; Huston v. Hanson, Mo., 353 S.W.2d 577. And even if the principle of rehabilitation were applicable here, statements made in a subsequent deposition could not supply the factor needed. Berberich, supra, and other cases just cited. The offer was properly refused.

We find no reversible error and the judgment is affirmed.

All of the Judges concur.